# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| M.S., L.S., and C.J.S.,<br><br>Plaintiffs,<br><br>v.<br><br>PREMERA BLUE CROSS, MICROSOFT CORPORATION, and the MICROSOFT CORPORATION WELFARE PLAN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:19-cv-00199<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

This action concerns a denial of benefits under the Employee Retirement Income Security Act (ERISA).[1] Plaintiffs M.S., L.S., and C.J.S. bring this action against Defendants Premera Blue Cross (Premera), Microsoft Corporation (Microsoft), and Microsoft Corporation Welfare Plan (the Plan) claiming—among other things—Defendants violated the Mental Health Parity and Addiction Equity Act (Parity Act).[2] Defendants filed a joint Motion for Judgment on the Pleadings, seeking dismissal of Plaintiffs' Parity Act claim.[3] For the reasons explained below, Defendants' Motion is DENIED.

---

[1] 29 U.S.C. § 1001 *et seq*.

[2] *See* dkt. 2.

[3] *See* dkt. 25. Defendants do not seek judgment on the pleadings with respect to Plaintiffs' remaining claims.

1

# BACKGROUND[4]

The S. Family lives in King County, Washington.[5] M.S. and L.S. are C.J.S.'s parents.[6] The Plan is a self-funded employee welfare benefits plan under ERISA.[7] At all relevant times, Microsoft was the Plan's designated administrator and Premera served as the Plan's third-party claims administrator.[8] M.S. was a participant in the Plan and C.J.S. was a beneficiary of the Plan.[9]

On August 31, 2017, C.J.S. was admitted to Daniels Academy, a residential treatment facility in Utah that specializes in treating individuals on the autism spectrum.[10]

On September 8, 2017, Premera sent Plaintiffs a letter denying payment for C.J.S.'s treatment at Daniels Academy, stating it had determined such treatment was considered "not medically necessary."[11] Specifically, Premera noted that C.J.S. failed to meet a number of its criteria for mental health residential treatment, such as "[C.J.S.] cannot be managed safely in the community because, for the last 6 months or longer, [C.J.S.] ha[s] been repeatedly hurting [themselves] [or] hurting others" and "[C.J.S.'s] support system is . . . not able to . . . keep [C.J.S.] safe."[12]

---

[4] When reviewing a motion for judgment on the pleadings, the courts "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

[5] Dkt. 2 ¶ 1.

[6] Dkt. 2 ¶ 1.

[7] Dkt. 2 ¶ 5.

[8] Dkt. 2 ¶¶ 2, 4.

[9] Dkt. 2 ¶ 5.

[10] Dkt. 2 ¶ 6.

[11] Dkt. 2 ¶ 19.

[12] Dkt. 2 ¶ 19.

On February 27, 2018, M.S. and L.S. submitted a level one appeal of the denial of benefits for C.J.S.'s treatment at Daniels Academy.[13] In their appeal letter, they wrote that the criteria Premera utilized "incorrectly conflated acute and subacute levels of care" and that residential treatment is "designed for individuals who need[] a subacute level of care and [is] not appropriate for individuals experiencing acute symptomology."[14] They also wrote that Premera violated the Parity Act when it denied benefits for C.J.S.'s treatment because "Premera d[oes] not impose requirements such as acute symptomology on analogous intermediate levels of care such as skilled nursing facilities."[15]

On March 26, 2018, Premera sent Plaintiffs a letter stating it would still deny coverage for C.J.S.'s treatment.[16] The letter included an opinion written by an external reviewer who opined that C.J.S.'s treatment was not medically necessary.[17] The reviewer concluded that, "according to the terms of the Plan and [Premera's] criteria," C.J.S. did not qualify for residential treatment and instead could be safely and effectively treated at a lower level of care.[18]

On July 10, 2018, M.S. and L.S. requested the denial of C.J.S.'s treatment be reviewed by an external review agency.[19] In that letter, they reiterated their concerns about the criteria Premera utilized to evaluate C.J.S.'s claim.[20]

---

[13] Dkt. 2 ¶ 20.
[14] Dkt. 2 ¶ 21.
[15] Dkt. 2 ¶ 25.
[16] *See* dkt. 2 ¶¶ 29–30.
[17] Dkt. 2 ¶ 30.
[18] Dkt. 2 ¶ 31.
[19] Dkt. 2 ¶ 35.
[20] Dkt. 2 ¶ 35.

On July 27, 2018, an external review agency upheld the denial of benefits, concluding C.J.S.'s treatment was not medically necessary.[21]

Having exhausted their pre-litigation appeal obligations under ERISA and the Plan, Plaintiffs filed a Complaint with this court on March 20, 2019.[22]  Relevant here, Plaintiffs' Complaint alleges causes of action for: (1) improper denial of benefits and (2) violation of the Parity Act.[23]  On November 11, 2019, Defendants filed a Joint Motion for Judgment on the Pleadings, seeking dismissal of Plaintiffs' Parity Act claim.[24]

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[25]  The court reviews a Rule 12(c) motion seeking dismissal of a claim under the same standard it reviews a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.[26]

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[27]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28]  When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts [in the complaint] as true and

---

[21] Dkt. 2 ¶ 41.

[22] Dkt. 2.

[23] Dkt. 2 ¶¶ 49–56.  The Complaint also alleges a cause of action for failure to furnish certain Plan documents, dkt. 2 ¶¶ 57–60.  Defendants have not moved to dismiss that claim.

[24] Dkt. 25.

[25] Fed. R. Civ. P. 12(c).

[26] *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[28] *Id.*

4

view[s] them in the light most favorable to the plaintiff."[29] However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[30] The reviewing court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pled facts state a plausible claim for relief.[31] "Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[32]

## ANALYSIS

### I. PARITY ACT OVERVIEW

Congress enacted the Mental Health Parity Act (MHPA) in 1996, requiring group health plans to impose the same "aggregate lifetime and annual dollar limits for mental health benefits and medical and surgical benefits."[33] Congress amended the MHPA in 2008, when it passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008.[34]

As amended, the Parity Act is designed "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[35] In general terms, a health plan that provides medical and surgical benefits as well as mental health or substance abuse benefits "cannot impose more restrictions on the latter than it imposes on the former."[36]

---

[29] *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[30] *Iqbal*, 556 U.S. at 678.

[31] *Id.* at 679.

[32] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

[33] *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 (D. Utah 2016) (citation omitted).

[34] *Id.*

[35] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

[36] *Michael W. v. United Behavioral Health*, No. 2:18-cv-00818, 2019 WL 4736937, at *16 (D. Utah Sept. 27, 2019) (citing 29 U.S.C. § 1185a(a)(3)(A)).

Relevant here, the Parity Act prohibits insurers from imposing "treatment limitations" on mental health or substance abuse claims that are more stringent than the treatment limitations imposed on medical or surgical claims.[37]

Treatment limitations can come in one of two forms: quantitative and nonquantitative.[38] Quantitative treatment limitations are expressed numerically and would include treatment limitations such as "50 outpatient visits per year."[39] Nonquantitative treatment limitations are non-numerical treatment limitations that "otherwise limit the scope or duration of benefits for treatment under a plan."[40] With respect to nonquantitative treatment limitations, the Parity Act's implementing regulations provide that a plan:

> may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless . . . any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical surgical/benefits in the classification.[41]

In other words, an insurer violates the Parity Act if it employs "a nonquantitative limitation for mental health treatment that is more restrictive than the nonquantitative limitation applied to medical health treatments."[42]

---

[37] *See Michael D. v. Anthem Health Plans of Ky. Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019); *see also* 29 C.F.R. § 2590.712(c)(2)(i) ("A group health plan (or health insurance coverage offered by an issuer in connection with a group health plan) that provides both medical/surgical benefits and mental health or substance use disorder benefits may not apply any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.").

[38] *See* 29 C.F.R. § 2590.712(a).

[39] *Id.*

[40] *Id.*

[41] *Id.* § 2590.712(c)(4)(i).

[42] *David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-00803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019).

Parity Act violations can be alleged in the form of facial challenges or as-applied challenges.[43] A facial challenge is based on the express terms of the plan, while an as-applied challenge is based on the plan administrator's application of the plan.[44]

To succeed on a Parity Act claim, a plaintiff must show: "(1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared."[45] Generally, the third and fourth prongs of this test present a more substantial pleading challenge for parties than the first two prongs.[46] Accordingly, many courts have distilled the four-prong test into a two-part test: "To survive the dismissal of a Parity Act claim, a plaintiff must allege a medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services."[47] This court applies that two-part test in assessing Defendants' Motion.

## II. PLAINTIFFS' PARITY ACT CLAIM

Defendants' Motion raises two challenges to Plaintiffs' Parity Act claim. First, Defendants argue Plaintiffs have not adequately pleaded facts to support their Parity Act claim.[48] Second, Defendants argue that, even if Plaintiffs' Parity Act claim is adequately pleaded, it

---

[43] *Id.*

[44] *J.L. v. Anthem Blue Cross*, No. 2:18-cv-00671, 2019 WL 4393318, at *2 (D. Utah Sept. 13, 2019).

[45] *David S.*, 2019 WL 4393341, at *4 (quoting *Michael D.*, 369 F. Supp. 3d at 1174) (internal quotation marks omitted).

[46] *Id*.

[47] *Id.* (quoting *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18-CV-753, 2019 WL 2493449, at *3 (D. Utah June 14, 2019)) (internal quotation marks omitted).

[48] Dkt. 25 at 11–20.

should nonetheless be dismissed because it is duplicative of Plaintiffs' denial of benefits claim.[49] For the reasons explained below, the court concludes: (1) Plaintiffs have adequately pleaded their Parity Act claim and (2) Plaintiffs' Parity Act claim should not be dismissed as duplicative of their denial of benefits claim at this time.

### A. Plaintiffs Have Adequately Pleaded Their Parity Act Claim

Plaintiffs allege Defendants violated the Parity Act in denying coverage for C.J.S.'s treatment at Daniels Academy.[50] Defendants do not dispute that the Plan is subject to the Parity Act. Nor do Defendants dispute that the Plan provides both medical/surgical benefits and mental health/substance abuse benefits. Instead, Defendants argue Plaintiffs fail to allege facts sufficient to support their claim that Defendants violated the Parity Act.[51] The court disagrees.

Defendants argue Plaintiffs "allege no facts to support their [Parity Act claim], let alone plausible ones."[52] Defendants further assert "Plaintiffs here only plead general and conclusory allegations" and "Plaintiffs do not offer a single factual allegation as to how or by what standards defendants evaluated comparable medical/surgical claims."[53] But Defendants' reading gives short shrift to the Complaint.

In the Complaint, Plaintiffs allege Daniels Academy is a sub-acute inpatient residential treatment center setting whose medical/surgical analogues include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.[54] Plaintiffs further allege Defendants required C.J.S. to satisfy acute care medical necessity criteria

---

[49] Dkt. 25 at 6–10.
[50] Dkt. 2 ¶¶ 49–56.
[51] Dkt. 25 at 2.
[52] Dkt. 25 at 12.
[53] Dkt. 25 at 17.
[54] Dkt. 2 ¶¶ 6, 53.

8

to obtain coverage for sub-acute inpatient treatment at Daniels Academy, but the Plan does not require individuals receiving sub-acute inpatient treatment at medical/surgical analogues to satisfy acute medical necessity criteria to receive Plan benefits.[55] In other words, Plaintiffs allege Defendants impose acute symptomology criteria on sub-acute mental health/substance abuse inpatient treatment but do not impose such criteria on sub-acute medical/surgical inpatient treatment.

The court finds this sufficient at this stage to satisfy the requirement that Plaintiffs plead "a medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services."[56] Plaintiffs have sufficiently identified treatment at sub-acute inpatient residential treatment centers as the relevant mental health/substance abuse service and treatment at skilled nursing facilities, inpatient hospice care, and rehabilitation facilities as the relevant medical/surgical analogue.[57] And Plaintiffs have sufficiently identified the imposition of acute medical necessity criteria as the relevant nonquantitative treatment limitation.[58] Further, Plaintiffs have identified the imposition of acute medical necessity criteria as applying to sub-acute inpatient mental health/substance abuse treatment but not to the analogous sub-acute inpatient medical/surgical treatment. Plaintiffs have adequately pleaded their Parity Act claim.

---

[55] Dkt. 2 ¶¶ 25, 54. Defendants respond that Plaintiffs have no factual basis for this allegation and that it is merely a conclusory allegation and threadbare recitation of the elements of a Parity Act claim. Dkt. 34 at 3–4. The court disagrees. Plaintiffs' allegation regarding the different criteria applied to different types of claims is factual in nature. Indeed, it is a question of fact whether Defendants apply acute criteria to mental health/substance abuse claims while declining to do so with respect to medical/surgical claims. To the extent Defendants are concerned about litigants making such allegations without any underlying evidentiary basis, Rule 11 provides a safeguard against such baseless allegations.

[56] *David S.*, 2019 WL 4393341, at *4.

[57] Dkt. 2 ¶ 6, 53.

[58] Dkt. 2 ¶¶ 21, 25, 54.

### B. Plaintiffs' Parity Act Claim Is Not Duplicative of Their Denial of Benefits Claim

Having established that Plaintiffs have adequately pleaded their Parity Act claim, the court turns to Defendants' argument that the court should dismiss Plaintiffs' Parity Act claim—brought pursuant to 29 U.S.C. § 1132(a)(3)—because it is duplicative of their denial of benefits claim—brought pursuant to 29 U.S.C. § 1132(a)(1)(B). Defendants argue "Plaintiffs' ERISA Benefits Claim and their Parity Act Claim allege the same injury and seek the same relief."[59] Plaintiffs respond that their Parity Act claim is "qualitatively different" and seeks a different remedy from their denial of benefits claim. The court agrees with Plaintiffs.

Section 1132(a)(1)(B) permits a plan participant or beneficiary to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[60] Thus, under § 1132(a)(1)(B), a plaintiff may seek recovery of benefits they believe were improperly denied under the terms of the plan.

Section 1132(a)(3), in contrast, is broader and provides that a plan participant, beneficiary, or fiduciary may bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."[61] Thus, § 1132(a)(3) allows a plaintiff to seek equitable relief under ERISA.

As the Supreme Court has explained in the ERISA context, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"[62] Courts have

---

[59] Dkt. 25 at 6.

[60] 29 U.S.C. § 1132(a)(1)(B).

[61] *Id.* § 1132(a)(3).

[62] *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

interpreted this language to mean that equitable relief sought under § 1132(a)(3) is inappropriate when adequate relief for the plaintiff's injury can be obtained pursuant to § 1132(a)(1)(B).[63] In other words, a plaintiff may not simply "repackage" a § 1132(a)(1)(B) claim for denial of benefits as a § 1132(a)(3) claim.[64] Here, however, Plaintiffs' Parity Act claim is not a mere repackaging of their denial of benefits claim.

Plaintiffs' Parity Act claim, while based on a set of facts shared with their denial of benefits claim, seeks relief that is equitable in nature and properly sought under § 1132(a)(3). For example, Plaintiffs' Parity Act claim seeks an order requiring an injunction, reformation, disgorgement, surcharge, and estoppel.[65] These remedies were traditionally available only in equity.[66] Or stated somewhat differently, they are remedies that are not available under § 1132(a)(1)(B).[67]

Additionally, Plaintiffs' denial of benefits claim and Parity Act claim, while both based on similar facts, may well represent two different injuries.[68] And regardless of the outcome of the denial of benefits claim, the question of whether the Plan—or Premera's administration of the Plan—violates the Parity Act may still remain to be decided.[69] That is, it could be the case Plaintiffs are made whole in terms of monetary relief under their denial of benefits claim, but

---

[63] *See Christine S. v. Blue Cross Blue Shield of N.M.*, No. 2:18-cv-00874, 2019 WL 6974772, at *10–17 (D. Utah Dec. 19, 2019) (collecting cases); *see also Candace B. v. Blue Cross & Blue Shield of R.I.*, No. 2:19-cv-00039, 2020 WL 1474919, at *10 (D. Utah Mar. 26, 2020) ("*Lefler* interpreted *Varity* to authorize dismissal of § 1132(a)(3) claims when adequate relief is afforded under § 1132(a)(1)(B) . . . .").

[64] *Christine S.*, 2019 WL 6974772, at *11 (explaining that "*Varity* and its progeny prohibit 'repackag[ing]' simultaneous claims" under § 1132(a)(1)(B) and § 1132(a)(3)).

[65] Dkt. 2 ¶ 56.

[66] *See CIGNA Corp. v. Amara*, 563 U.S. 421, 440–42 (2011).

[67] *See id.* at 435–36 (explaining that reformation, for example, is not an available remedy under § 1132(a)(1)(B)).

[68] This court has permitted simultaneous § 1132(a)(1)(B) and § 1132(a)(3) claims in cases in which the injuries alleged under each section are distinct. *See, e.g., Candace B.*, 2020 WL 1474919, at *10.

[69] Dkt. 31 at 12 ("Regardless of the outcome of the [denial of benefits claim], if the Court ultimately determines that Premera and the Plan violated [the Parity Act], the Court could then fashion appropriate equitable remedies to make Plaintiffs whole . . . .").

11

moving forward Plaintiffs could still be subject to terms of the Plan or operation of the Plan that violate the Parity Act. In that scenario, Plaintiffs' monetary injury would be relieved, but Plaintiffs' injury of being subject to a plan that violates the Parity Act would remain unremedied.

Taken together, the court concludes Plaintiffs' Parity Act claim is not duplicative of their denial of benefits claim. At this stage, then, the court will allow Plaintiffs to proceed with both claims.

### III. OUTSTANDING ISSUES

Having resolved the bulk of Defendants' Motion, the court turns to two remaining issues raised in the parties' papers.

First, Defendants argue Plaintiffs have no standing to seek equitable relief for non-parties, and therefore the court should dismiss any claims to the extent they purport to seek relief on behalf of all Plan participants.[70] As an initial matter, it is unclear to the court from the face of the Complaint whether Plaintiffs are actually seeking any equitable relief on behalf of any non-parties. This uncertainty notwithstanding, Defendants' request is premature. Defendants do not contest whether the requested equitable relief is available in the first instance, but rather what the scope of that relief may be. As this court has explained in the Rule 12(b)(6) context, however, piecemeal dismissal of parts of claims is inappropriate at the pleading stage.[71] Indeed, this court has expressly rejected a defendant's attempt at the Rule 12(b)(6) stage to limit the scope of equitable relief sought under a claim.[72] Given that the court evaluates Rule 12(c) motions seeking dismissal of claims under the same standards that govern Rule 12(b)(6) motions, the

---

[70] Dkt. 25 at 10–11.

[71] *See FTC v. Nudge, LLC*, No. 2:19-cv-00867, 2019 WL 7398678, at *12–13 (D. Utah Dec. 31, 2019); *FTC v. Zurixx, LLC*, No. 2:19-cv-713, 2020 WL 927531, at *9 (D. Utah Feb. 26, 2020); *Candace B.*, 2020 WL 1474919, at *6 n.78.

[72] *Nudge*, 2019 WL 7398678, at *12–13.

court concludes the prohibition against piecemeal dismissal of parts of claims applies with equal force in this context. Therefore, the court declines Defendants' invitation to dismiss Plaintiffs' Parity Act claim to the extent that claim seeks equitable relief on behalf of all Plan participants.[73]

Second, Plaintiffs ask the court in their Opposition to grant their pending Motion for Discovery.[74] The court declines to rule on that Motion at this time and instead defers resolution of that Motion—consistent with this Order—to the Magistrate Judge.

## CONCLUSION

For the reasons stated above, Defendants' Joint Motion for Judgment on the Pleadings[75] is DENIED.

**SO ORDERED** this 7th day of April, 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[73] Further, it is unclear from the authority cited in Defendants' Motion that Plaintiffs would lack standing to seek equitable relief on behalf of non-parties. To support their argument that Plaintiffs lack such standing, Defendants cite to caselaw interpreting § 1132(a)(1)(B). Dkt. 25 at 10–11. That section provides, "[a] civil action may be brought by a participant or beneficiary to recover benefits *due to him* under the terms of his plan, to enforce *his rights* under the terms of the plan, or to clarify *his rights* to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Thus, it is clear that statutory standing to bring a § 1132(a)(1)(B) claim is limited to participants or beneficiaries who seek relief on their own behalf. It is not clear, however, whether that same limitation applies to § 1132(a)(3), which provides, "[a] civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Specifically, § 1132(a)(3) does not contain the requirement that the participant or beneficiary be seeking to "recover benefits *due to him*" or to enforce or clarify "*his rights* under the terms of the plan." In any event, however, the court need not resolve this issue here for the reasons outlined above.

[74] Dkt. 21.

[75] Dkt. 25.